NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SUPERCELL OY,**
*Appellant*

**v.**

**GREE, INC.,**
*Appellee*

---

2020-2005

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2019-00083.

---

Decided:  September 29, 2021

---

MICHAEL JOHN SACKSTEDER, Fenwick & West LLP, San Francisco, CA, for appellant.  Also represented by TODD RICHARD GREGORIAN; JENNIFER RENE BUSH, Mountain View, CA; GEOFFREY ROBERT MILLER, New York, NY.

JOHN C. ALEMANNI, Kilpatrick Townsend & Stockton LLP, Raleigh, NC, for appellee.  Also represented by STEVEN MOORE, San Francisco, CA; ANDREW WILLIAM RINEHART, Winston-Salem, NC.

---

Before MOORE, *Chief Judge*, REYNA and HUGHES, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant Supercell Oy appeals a final written decision of the Patent Trial and Appeal Board that certain claims of Supercell's patent are unpatentable as obvious under 35 U.S.C. § 103. On appeal, Supercell challenges the Board's obviousness determination largely on the basis that the Board erred in rejecting Supercell's claim construction argument. We affirm.

## BACKGROUND

### The '520 Patent

Supercell is the assignee of U.S. Patent No. 9,104,520 (the "'520 Patent"), which discloses a method and apparatus for more efficiently upgrading a mobile application ("app") from one version to the next. *See* '520 Patent col. 1 ll. 15–17. The patent explains that an app "installation package," which is stored on a user's mobile device, contains both a "data portion" and a "customized information portion." *Id.* at col. 1 ll. 42–47. The patent further explains that any given app upgrade might require "many patch packages," i.e., multiple installation packages associated with the same upgrade version, because a single app version may require a range of installation packages with identical data portions and different customized information portions. *Id.* at col. 1 ll. 47–52.

The '520 Patent purports to reduce the amount of work required to upgrade an app by eliminating the need for multiple patches with varying customized information. *Id.* at col. 3 ll. 52–55. Instead of creating multiple installation packages for each new version, the patent discloses a shortcut that involves removing the customized information portion from an existing installation package, upgrading the remaining data portion with a single universal

patch package, and combining the updated data portion with the old customized information portion to create the new installation package. *Id.* at col. 2 ll. 4–16.

Claim 1 is representative:

A method for upgrading an application, comprising:

> obtaining a patch package corresponding to a current installation package of an application;

> removing a customized information portion from the current installation package and obtaining a data portion of the current installation package;

> generating a data portion of a new installation package according to the patch package and the data portion of the current installation package;

> obtaining the new installation package by adding the customized information portion to the data portion of the new installation package; and

> installing the new installation package.

*Id.* at col. 9 l. 65–col. 10 l. 8.

## Inter Partes Review

On October 12, 2018, Appellee GREE, Inc. petitioned for inter partes review, challenging claims 1–8, 10–16, and 18–20 of the '520 Patent as obvious under 35 U.S.C. § 103. *GREE, Inc. v. Supercell Oy*, No. IPR2019-00083, 2020 WL 2479654, at *1 (P.T.A.B. May 11, 2020). The Board instituted review on all asserted grounds of unpatentability. *Id.*; J.A. 519.

The specification of the '520 Patent teaches multiple detailed embodiments of the claimed invention and includes the disclaimer: "The foregoing [are] only preferred examples of the present invention and [are] not used to limit the protection scope of the present invention." '520 Patent col. 9 ll. 58–60.   In describing an exemplary embodiment, the specification teaches that "[t]he customized information portion comprises at least one of a release channel of the application, a network traffic tip, an update mode or a link to the release channel."   *Id.* at col. 4 ll. 10–12; *see also id.* at col. 9 ll. 10–13.   Based on this specific embodiment, Supercell argued before the Board that the term "customized information portion" should be construed to necessarily include at least one of those four types of information.   *GREE*, 2020 WL 2479654, at *3.

The Board rejected Supercell's proposed claim construction because it found that the specific embodiment on which Supercell relied was "merely exemplary."   *Id.*   The Board also observed that the '520 Patent identifies other types of customized information that could be included in the customized information portion, as demonstrated by the embodiment depicted in Figure 4 of the patent.   *Id.* at *4 (quoting '520 Patent col. 6 ll. 20–25).   The Board declined to construe the term further, noting that, in any event, "the asserted prior art teaches 'a customized information portion' under [Supercell]'s proposed construction."   *Id.*; *see also id.* at *13 ("[Supercell's] proposed construction does not require any change to the data but, rather, is simply a matter of labeling data.").

The Board concluded that claims 1, 7, 8, 10, 15, 16, and 18 of the '520 Patent are unpatentable as obvious over the combination of three prior art references: Waldmann, Schuelein, and applicant-admitted prior art ("AAPA") found in the '520 Patent.   *GREE*, 2020 WL 2479654, at *16–18.

Waldmann discloses a method and system for "installing a new version of a hearing-device fitting-software package on a computer system."[1]    Int'l Patent Appl. No. WO 2007/020300, *Method for Installing a New Version of a Hearing-Device Fitting-Software Package on a Computer System* ("Waldmann") p. 1 ll. 8–10. "In order to minimize the amount of data to be transferred . . . for updating a hearing-device fitting-software package," Waldmann teaches a method of "distribut[ing] in the installation-software package basically only those files . . . which have changed between the previous and the new version of the hearing-device fitting-software package." *Id.* p. 2 ll. 22–28. Waldmann explains that the "new files could then be merged with an existing installation . . . so as to derive the desired updated version of said hearing-device fitting-software package." *Id.* p. 2 l. 29–p. 3 l. 3.

Schuelein discloses a method and system to "upgrade software applications at a remote service center." U.S. Patent Appl. Publ'n No. 2006/0271925, *Software Upgrades with Centralized Preparation* ("Schuelein") ¶ 5. In particular, Schuelein teaches a way to preserve "customer specific data and customer protocols" from one application version to the next. *Id.* As described in Schuelein, customer-specific data might "relate to the type of hardware, the hardware configuration, the software configuration, measurement protocols generated by the customer, and network information." *Id.* ¶ 32. Schuelein teaches that customer-specific data "may be identified and saved" separately while a "new or revised version of the software application may be installed"; then, a person or computer can

---

[1]    "Hearing-device fitting-software," as used in Waldmann, refers to software "used by hearing device professionals for adjusting hearing devices."    Waldmann p. 1 ll. 10–12.

"integrate the customer[-]specific data with the revised version of the software application." *Id.* ¶¶ 32–36.

Based on the foregoing, the Board found that Waldmann discloses a method for upgrading software on a computer by using a patch package to upgrade an old installation package while preserving user-inputted data and preferences from one version to the next. *GREE*, 2020 WL 2479654, at *9 (citing Waldmann at 21). The Board found that Schuelein teaches identifying, saving, and transferring customer-specific information in the same way the '520 Patent discloses "removing" a customized information portion. *Id.* at *13 (citing Schuelein ¶¶ 32–33, 35–36). The Board also noted that the AAPA discloses an installation package having a customized information portion. *Id.* at *12 (citing '520 Patent col. 1 ll. 42–47).

The Board identified a motivation to combine the prior art references because "both Waldmann and Schuelein disclose that it is desirable to preserve customized data during the upgrade process." *Id.* at *16 (internal quotation marks and citations omitted). According to the Board, a person of ordinary skill in the art would have been motivated to combine the AAPA with Waldmann and Schuelein "because the known separation of installation packages into a data portion and a customized information portion would have permitted the preservation of customized information as taught by both Waldmann and Schuelein." *Id.* Supercell appeals from the Board's final written decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

STANDARD OF REVIEW

We review decisions by the Patent Trial and Appeal Board in accordance with the Administrative Procedure Act, 5 U.S.C. § 706. *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999). Thus, we review the Board's legal conclusions de novo and its factual findings for substantial evidence. *ACCO Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361, 1365 (Fed. Cir. 2016). Substantial evidence means "such

relevant evidence as a reasonable mind might accept as ad-equate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

Claim construction is ultimately a question of law that may be based on underlying factual findings. *Teva Pharms. U.S.A., Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332–33 (2015). We review the Board's claim constructions based on intrinsic evidence de novo and those based on extrinsic evidence for substantial evidence. *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1278 (Fed. Cir. 2017).

Obviousness is also a question of law with underlying factual issues relating to the "scope and content of the prior art, differences between the prior art and the claims at is-sue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)).

DISCUSSION

I

Supercell's appeal rises and falls, for the most part, with its claim construction argument, so we first address claim construction.

We begin our review of the Board's decision by noting that it appears Supercell raises an entirely new argument on appeal. Before the Board, "Supercell argued . . . that [the] term 'customized information portion' is expressly de-fined in the specification as comprising 'at least one of a release channel of the application, a network traffic tip, an update mode or a link to the release channel.'" Appellant's Br. 17 n.6 (citing J.A. 543). On appeal, Supercell claims that "the customized information portion is the part of the current installation package that contains metadata per-taining to the installation *and not the application data*." *Id.* at 19–20 (emphasis added). In other words, Supercell

now argues that a "customized information portion" may contain "metadata pertaining to the installation and not the application data." *See id.*

The argument raised before this court is significantly different from the argument Supercell advanced before the Board. Whereas Supercell proposed a minimum-inclusionary construction before the Board, it proposes an exclusionary construction now. We routinely decline to consider arguments raised for the first time on appeal because the failure to raise an argument before the Board constitutes a forfeiture of that issue. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020). Notwithstanding the apparent forfeiture, however, we note that Supercell's position lacks merit in any event.

We refuse to accept Supercell's invitation to read limitations into the '520 Patent. The terms "metadata" and "application data" do not appear anywhere in the '520 Patent, and the patent does not provide that a customized information portion *cannot* contain any "customer specific data and protocols," as Supercell argues. Appellant's Br. 20. Indeed, the language in the '520 Patent belies Supercell's argument. The specification describes an embodiment in which the customized information includes "a device type." '520 Patent col. 6 ll. 21–22. Supercell argues that "device type" is listed as an example of customized information in the '520 Patent to "merely indicate[] a specific device type for which the *installation package* is designed." Appellant's Br. 20. But "device type" is necessarily customer-specific, as it identifies the type of device on which a customer upgrades an application.

Nor are we persuaded to limit the construction of a term on the basis of a single exemplary embodiment, as Supercell urged the Board to do. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned

against confining the claims to those embodiments."); *accord, e.g.*, *SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 872 (Fed. Cir. 2020) (affirming Board's decision "declining to import exemplary embodiments of 'instruction code' from the specification into the broader claim term 'instruction data'"). As the Board noted, the '520 Patent discloses multiple exemplary embodiments, and not every example contains the limitation Supercell wishes to impose on the claimed term. *See GREE*, 2020 WL 2479654, at *4 (quoting '520 Patent col. 6 ll. 20–25). We hold that the Board did not err in declining to import limitations from one embodiment into the claimed term "customized information portion."

We affirm the Board's rejection of Supercell's proposed construction of the term "customized information portion." To the extent Supercell's additional arguments rely on our acceptance of its proposed construction, those arguments necessarily fail as well.

## II

Supercell also argues that the prior art does not disclose the claimed limitations of "removing a customized information portion" or "obtaining the new installation package by adding the customized information portion to the data portion of the new installation package." *See* Appellant's Br. 28–38; *see also* '520 Patent col. 9 l. 67–col. 10 l. 8. We disagree.

Schuelein teaches identifying and setting aside customer-specific information while a new version of the software application is installed, then integrating the customer-specific data with the revised application version. Schuelein ¶¶ 32–36. Schuelein explains that "[t]he modified revised version of the software application implementing the customer specific data and/or customer protocols may then be transferred to the customer facility for installation." *Id.* ¶ 5. Under the broadest reasonable interpretation of the claimed terms, the Board's

determination that Schuelein teaches removing a customized information portion and obtaining a new installation package by combining the removed portion with an upgraded data portion is supported by substantial evidence.

We have considered the other arguments raised by Supercell and find them unpersuasive.

## **AFFIRMED**

COSTS

No costs.